IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH MORTON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 06-166 |
| | ) | |
| vs. | ) | Judge Arthur J. Schwab/ |
| | ) | Magistrate Judge Lisa |
| FRANKLIN TENNIS, Superintendent- | ) | Pupo Lenihan |
| SCI-Rockview, THE DISTRICT ATTORNEY) | | |
| OF ALLEGHENY COUNTY, and THE | ) | |
| ATTORNEY GENERAL OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**RECOMMENDATION**

It is respectfully recommended that the petition filed pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

**REPORT**

Joseph Morton, ("Petitioner") seeks habeas relief from his conviction for second degree murder and life sentence in connection with a 1982 rape and murder of a sixteen year old girl. Because he procedurally defaulted his second claim regarding his allegedly coerced confession, this claim does not provide a basis for relief. In addition, his due process claim of an unfair trial and his ineffective assistance of counsel claim lack merit. Accordingly, his petition should be denied.

**A. Relevant Factual and Procedural History**

Petitioner is proceeding pro se. In his Section 2254 petition, he raises the following issues:

GROUND ONE: Ineffective assistance of trial counsel . . . [because] trial counsel failed to object to the

portion of the Detective[']s notes/alleged confession
wherein Petitioner allegedly admits committing another
unrelated crime [which was] . . . given to the jury
during deliberations.

GROUND TWO: Conviction was obtained by use of a coerced
confession. . . . During questioning [by the police
detective] petitioner requested an attorney.  The
Detectives ignored this request and continued badgering
Petitioner until he signed a "confession" that was not
authored by him [i.e., Petitioner].

GROUND THREE: Petitioner was denied due process and a
fair trial when [the] Jury received evidence of
unrelated crimes . . . . The jury was allowed to view
an alleged confession by Petitioner wherein he is
alleged to admit to commiting [sic] [an]other unrelated
but similar crime.

Doc. 5 at 5, 6, & 8.   The Respondents filed an answer, in which

they claimed, inter alia, that Petitioner procedurally defaulted

his second and third claims and that all three claims lack merit.

Doc. 13-1 at 19 & 21-22 (procedural default) and id. at 22-30

(addressing the merits).   Petitioner filed a traverse, Doc. 14,

in which he contends that he did exhaust his claims, and

inferentially, they were not procedurally defaulted and that his

claims have merit.

   Although the rape and murder of the sixteen year old girl

occurred in May 1982, Petitioner was not arrested for the crimes

until May 1998, roughly 16 years later, after Anthony Fiebiger,

Petitioner's accomplice in the murder and rape, implicated

Petitioner in the girl's murder.   After Petitioner's arrest,

Petitioner confessed to his participation in the crimes.[1]

---

   [1]  Although in the state courts, and in parts of his
traverse, Petitioner denied that he ever made the confession, he
also appears to now concede that he made the confession.  See,
e.g., Doc. 14-1 at 8 ("Because Petitioner's subsequent recorded

Following the denial of a motion to suppress filed by Petitioner's public defender, a jury trial commenced and the fact that Petitioner confessed was admitted into evidence, as were the notes of the confession taken by the interviewing detective. Doc. 13-3 at 29 (holding the notes of the confession were admitted into evidence). Those written notes of the confession also included an oblique reference by the Petitioner concerning another incident wherein he and his accomplice picked up a hitchhiking young woman and both had sexual relations with her. A copy of the notes is attached hereto as exhibit A. The purportedly objectionable portion appears directly above the signature of the Petitioner. Reading the notes, it is not apparent that the lines refer to an incident other than the rape and murder of the 16 year old girl. There is little or no punctuation, no dates referenced, nothing in the body of the notes that gives the reader a signal that some incident other than the murder is being recounted, nor is there any indication of who is allegedly taking the actions being recounted. For ease of reading, the court will interpolate what is missing from the notes. However, it is important to note that the court's ability

_____

interviews were in response to further police initiated questioning, any alleged waiver or [sic, should be "of"] rights associated with the statement is without effect."). In fact, without conceding that he made the confession, it is difficult to understand how he can argue his second ground, i.e., the confession was coerced. The confession was either completely fabricated, as he contended in the state courts or it was coerced, it does not appear that he can have it both ways. At least, as explained below, he cannot argue it was fabricated in the state courts and then make the different argument here that it was coerced.

to interpolate what is missing came from portions of the record
that were not available to the jury.  In other words, the import
of the notes would not be clear to the juror reading them because
they would not have the benefit of vital background information
provided during the suppression hearing, the transcript of which
this court had the opportunity to review. The portion of the
notes at issue with the court's interpolations reads as follows:

> had picked up a girl together[.] But it wasn't rape[.]
> She wanted it – had Tony[']s boss['] car[.] [The woman
> was] hitch hiking on Brownsville Rd[.] [After the
> sexual encounter, she] put on clothes [and] caught cab.

Doc. 13-3 at 41.[2]  The trial court had permitted Petitioner's
confession to be recounted to the jury.  See State Court Record,
Notes of Testimony at 36-37 (hereinafter cited at "SCR, N.T. at
__").  But the trial court had excluded the above quoted portion
of the confession from being entered into evidence.  SCR, N.T. at
19-22.

After the jury had retired for deliberations, they asked to
see the written notes of the confession. The trial judge called
the jury into the court room along with the parties and the
jurors, while in the jury box, were permitted to review the notes
of the confession. Doc. 13-3 at 26 to 28.  However, the above
quoted part was not redacted and the jury could have viewed that
part of the confession as well.

At trial, Petitioner was represented by the Allegheny County
Public Defenders Office.  During the trial, Petitioner took the

---

[2]  The reference to "Tony" is a reference to Petitioner's
accomplice, Anthony Fiebiger.

stand and denied involvement in the crime and denied making the confession.  SCR, N.T. at 218 – 292 (specifically at 231 & 274 wherein Petitioner denied making any statements or confession to the Detectives).

After his conviction and sentence, while still represented by the Public Defenders Office, Petitioner filed an appeal to the Superior Court.   In that appeal, he raised the following issues:

> I. When Pa.R.Crim.P. 1114[3] specifically mandates, "during deliberations, the jury shall not be permitted to have . . . a copy of any written or otherwise recorded confession by the defendant," did not the trial court commit reversible error in allowing the pre-interrogation warning form, signed by Mr. Morton and the detective's written notes of the alleged confession, signed by Mr. Morton, to be given to the jury during their deliberations?
>
> . . . .
>
> II.  Did the trial court erred [sic] in failing to grant a mistrial during Mr. Morton's trial for second degree murder based on a rape and killing with a co-actor, upon realization that during deliberations, the jury had been given and studied the un-redacted version of the notes of Mr. Morton's alleged confession referring to another incident in which he and the co-actor "had picked up a girl together but it wasn't rape she wanted it," specifically ruled inadmissible and prejudicial by the court during trial?

Doc. 13-4 at 8.  The Superior Court affirmed.  <u>Commonwealth v. Morton</u>, 774 A.2d 750 (Pa.Super. 2001).

Still represented by the Public Defenders office, Petitioner filed a petition for allowance of appeal ("PAA") with the

---

[3]   Former Pa.R.Crim.P. 1114 is now currently Pa.R.Crim.P. 646.

Pennsylvania Supreme Court. Doc. 13-6.[4]  The Pennsylvania Supreme

---

[4]  In that PAA, the following issues were raised:

I.  WHEN PA.R.CRIM.P. 1114 (RENUMERATED RULE 646) SPECIFICALLY MANDATES, "DURING DELIBERATIONS, THE JURY SHALL NOT BE PERMITTED TO HAVE A COPY OF ANY TRIAL TESTIMONY OR A COPY OF ANY WRITTEN OR OTHERWISE RECORDED CONFESSION BY THE DEFENDANT," DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN 1) SENDING THE SIGNED PRE-INTERROGATION WARNING FORM INTO THE JURY ROOM FOR THE ENTIRETY OF THE JURY'S DELIBERATIONS, AND 2) ALLOWING THE JURY TO HAVE AND REVIEW FOR TWENTY MINUTES IN THE COURT ROOM DURING DELIBERATIONS THE DETECTIVE'S WRITTEN NOTES OF THE ALLEGED CONFESSION WHICH HAD BEEN SIGNED BY THE DEFENDANT?

A.  DOES RULE 1114'S EXPLICIT PROHIBITION THAT A JURY SHALL NOT HAVE DURING DELIBERATIONS "A TRANSCRIPT OF TRIAL TESTIMONY OR ANY WRITTEN OR OTHERWISE RECORDED CONFESSION" INCLUDE A PRE-INTERROGATION WARNING FORM, COMPLETED WITH THE DEFENDANT'S ANSWERS AND SIGNATURE DURING AN INTERROGATION AS PART OF AN ALLEGED VOLUNTARY ADMISSION OF GUILT?

B.  DOES RULE 1114'S EXPLICIT PROHIBITION THAT "A JURY SHALL NOT HAVE DURING DELIBERATIONS" A COPY OF ANY TRIAL TESTIMONY OR ANY WRITTEN OR OTHERWISE RECORDED CONFESSION PRECLUDE THE JURY FROM HAVING AND REVIEWING FOR TWENTY MINUTES IN THE COURTROOM DURING DELIBERATIONS SIGNED WRITTEN NOTES OF THE DEFENDANT'S ALLEGED CONFESSION?

C.  IF THE TRIAL COURT'S RULINGS WERE NOT GOVERNED BY THE EXPLICIT PROHIBITION OF RULE 1114, DID ALLOWING THE JURY TO HAVE THE PREINTERROGATION WARNING FORM IN THE JURY ROOM AND THE WRITTEN NOTES OF THE ALLEGED CONFESSION IN THE COURT ROOM AFTER DELIBERATIONS HAD BEGUN CONSTITUTE AN ABUSE OF DISCRETION IN THIS CASE, DENYING MR. MORTON A FAIR TRIAL?

II.  DID THE TRIAL COURT ERROR [sic] IN FAILING TO GRANT A MISTRIAL DURING MR. MORTON'S TRIAL FOR SECOND DEGREE MURDER BASED ON A RAPE AND KILLING COMMITTED WITH A CO-ACTOR, UPON REALIZATION THAT DURING DELIBERATIONS, THE JURY HAD BEEN GIVEN AND STUDIED FOR

Court denied the PAA without opinion.  Doc. 13-10 at 38.

Thereafter, Petitioner filed a pro se PCRA petition.  Doc. 13-8 at 1 to 11.  Subsequently, appointed counsel filed an amended PCRA petition.  Doc. 13-8 at 13 to 26.  In that amended PCRA petition, the sole issue raised was:

> 27.  Petitioner asserts that defense counsel's failure to object to the publishing of the alleged statement [i.e., concerning the other incident of picking up the girl in the car of the accomplice's boss and having sex with her] in its entirety was ineffective assistance of counsel.

Doc. 13-8 at 18.  The PCRA court dismissed the petition without a hearing.  Doc. 13-8 at 28.  The PCRA court found that the sole issue raised contravened the PCRA statute's ban against raising previously litigated claims.  Doc. 13-9 at 1 to 13.   Represented by the same counsel, Petitioner then filed an appeal to the Superior Court.  The sole issue raised therein was

> DID THE LOWER COURT ERR IN DENYING APPELLANT A HEARING ON HIS AMENDED POST-CONVICTION RELIEF ACT ISSUE OF INEFFECTIVE ASSISTANCE FOR TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PUBLISHING OF APPELLANT'S ALLEGED STATEMENT IN ITS ENTIRETY TO THE JURY?

Doc. 13-9 at 20.  The Superior Court affirmed. Doc. 13-9 at 41 to 44.   Still represented by the same counsel, Petitioner filed a PAA, wherein he raised the exact same issue he raised before the

---

TWENTY MINUTES THE UN-REDACTED VERSION OF THE NOTES OF MR. MORTON'S ALLEGED CONFESSION REFERING [sic] TO ANOTHER INCIDENT IN WHICH HE AND THE CO-ACTOR "HAD PICKED UP A GIRL TOGETHER BUT IT WASN'T RAPE SHE WANTED IT." SPECIFICALLY RULED INADMISSIBLE AND PREJUDICIAL DURING TRIAL?

Doc. 13-6 at 9.

Superior Court.[5]  The Pennsylvania Supreme Court denied the PAA without opinion.  Doc. 13-10 at 38.

### B.  **Applicable Legal Principles**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996.  Because petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. §2254(a).  Smith v. Phillips, 455 U.S. 209 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991).  Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted.  Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991).

### C.  **Discussion**

---

[5]  Specifically, he raised the issue that

DID THE LOWER COURT ERR IN DENYING PETITION[ER] A HEARING ON HIS AMENDED POST-CONVICTION RELIEF ACT PETITION ISSUE OF INEFFECTIVE ASSISTANCE FOR TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PUBLISHING OF PETITIONER'S ALLEGED STATEMENT IN ITS ENTIRETY TO THE JURY?

Doc. 13-10 at 11.

### 1.   Procedural Default

The Respondents first point out that Petitioner's claim enumerated as Ground 2, i.e., the allegedly coerced confession issue, is procedurally defaulted because Petitioner never presented the issue to the state courts.  Doc. 13-1 at 19 and 21. This court agrees.

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court.  See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).

There are two exceptions to the procedural default doctrine. A federal legal issue that was not raised or properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default.  Wainwright v. Sykes.  In order "[t]o show cause, a petitioner must prove 'that some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted). The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts v. Vaughn, the Court explained this exception as follows:

> Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Id.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. See, e.g., Carter v.

<u>Vaughn</u>, 62 F.3d 591, 595 (3d Cir. 1995).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition with prejudice. <u>See</u>, <u>e.g.</u>, <u>Wainwright v. Sykes</u>; <u>McClain v. Deuth</u>, 151 F.3d 1033 (Table), 1998 WL 516804, *2 (7th Cir. 1998); <u>Redeagle-Belgarde v. Wood</u>, 199 F.3d 1333 (Table), 1999 WL 985164, *4 (9th Cir. 1999); <u>McNary v. Farley</u>, 16 F.3d 1225 (Table), 1994 WL 59278, *3 (7th Cir. 1994); <u>Thompson v. Champion</u>, 996 F.2d 311 (Table), 1993 WL 170924, *3 (10th Cir. 1993).

The court finds that Petitioner completely failed to present his Ground 2 claim of coerced confession in state court at any stage. In fact, throughout his state proceedings, Petitioner steadfastly denied that he ever made any confession to the authorities. Hence, it is not surprising that he failed to ever raise the issue that the confession that he never made was coerced. Accordingly, the coerced confession issue is procedurally defaulted.

Pennsylvania law is clear in its application of a rule of waiver in multiple contexts. An issue not raised at trial or on direct appeal to the Superior Court is waived. <u>Commonwealth v. Agie</u>, 296 A. 2d 741, 741 (Pa. 1972); <u>Commonwealth v. Mitchell</u>, 445 A.2d 721, 723 (Pa. 1982). Petitioner cannot show cause and prejudice for this specific procedural default because the only claim he could have is that his counsel at trial and on direct

appeal were ineffective for failing to raise the issue that his confession was coerced. It is undisputed that Petitioner never raised this claim. Accordingly, because the coerced confession issue was procedurally defaulted and Petitioner cannot show cause and prejudice or a miscarriage of justice, this issue cannot afford Petitioner relief.

### 2.   Issues Addressed on the Merits

In Petitioner's Ground 1, he raises a claim of ineffective assistance of trial counsel, i.e., trial counsel failed to object to the portion of the Detective's notes regarding the other incident of consensual sex with a hitchhiker.  The state courts did not address this claim on the merits, finding instead, that they could not address it because the claim was previously litigated just under a different theory and this is barred under the PCRA statute.  The "previously litigated" bar however, does not constitute a procedural default for federal habeas corpus purposes.  Williams v. Brooks, 435 F.Supp.2d 410, 421-22 (E.D. Pa. 2006).  Because the state courts did not address this issue of ineffectiveness on the merits, this court is free to address it de novo.[6]

_____

[6] See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)(where the state courts did not address a federal legal issue and the federal habeas court does entertain such federal claim on the merits, then "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA.  However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence."). Accord Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); Weeks v. Angelone, 176 F.3d 249, 258 (4th

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the defendant must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000).  Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.   In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." <u>Buehl v. Vaughn,</u> 166 F.3d 163, 172 (3d Cir. 1999) (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 696).  The <u>Strickland</u> test is conjunctive and a habeas petitioner must establish both the

Cir. 1999).

13

deficiency in performance prong and the prejudice prong.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Dooley v. Petsock</u>, 816 F.2d 885, 889 (3d Cir. 1987).  As a result, if a petitioner fails on either prong, he loses.  <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); <u>Foster</u> <u>v. Ward</u>, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

To put Petitioner's claim of ineffectiveness in perspective, it is helpful to recount exactly what transpired.  As the trial court explained, after the jury had begun their deliberations, they requested to view the notes of the confession, the judge called them back into the jury box in open court and

> [t]he jury was permitted to review the detective's notes individually while seated in the jury box. The jury was specifically told that this document could not go with them during deliberations.  The jury was also cautioned not to give any undue weight to this exhibit, as this exhibit was just one piece of evidence which should be considered along with all other evidence in the trial.
> The record reflects that the entire time for the twelve jurors to individually review this document was a total of nineteen minutes, or from 4:12 P.M. until 4:31 P.M.  At 4:31 P.M., this exhibit was returned to the Court.
>
>         . . . .
>
> The twelve jurors spent a total of nineteen minutes reviewing these notes in the jury box.  Thus, each

> juror had an average of one and a half minutes to
> review these notes.

Doc. 13-3 at 28.

Furthermore, in considering the notes themselves, it is not clear that the jurors would have understood that the portion of the notes, which Petitioner objects to, was referring to a different incident other than the murder, as there is no date, no punctuation, nothing clearly indicating that Petitioner was referring to another incident. Even if they had understood the notes were referring to another incident, it is not clear that they would have necessarily understood that Petitioner was part of this incident In other words, the evidence is, **at best**, ambiguous as to whether the jury would have understood these lines to refer to another incident or that the other incident involved Petitioner.  To the extent that Petitioner's argument depends on resolving this ambiguity against the Commonwealth and in favor of him, his argument must fail.  The rule in federal habeas cases is that ambiguities in the record are construed in favor of the Commonwealth and against the habeas petitioner. See, e.g., Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . His [i.e., the habeas petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that

15

one who seeks collateral relief bears a heavy burden.");  A copy of the notes is appended hereto as exhibit A.

In light of the evidence of Petitioner's guilt, i.e., his own confession, which was recounted by the detective on the stand (but without him referring to the unrelated incident), and which the jurors apparently credited, Petitioner has simply failed to carry his burden to show that he was prejudiced by his trial counsel's failure to object to the unredacted portion of the notes.  In other words, Petitioner has failed to establish that there is a reasonable probability that, but for counsel's failure to object to the unredacted portion, the result of the proceeding would have been different.   Accordingly, this issue does not merit relief.

The court will also address on the merits, Petitioner's claim, raised in Ground 3, that he was denied due process when the jury was permitted to see the unredacted version of the notes containing the portion that Petitioner objects to as referring to other bad acts.

A claim that one was denied "due process" is a claim that one was denied "fundamental fairness." See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,' Spencer v. Texas, 385 U.S. 554, 563-564 (1967)[.]"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)

16

("In order to prevail on a claim that an . . . error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial").  Because the guideposts for decision making under the rubric of due process are lacking, the Supreme Court has cautioned that

> In the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly" based on the recognition that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

Medina v. California, 505 U.S. 437, 443 (1992)(some citations omitted).

"A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted."  Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).  Where the evidence of guilt is so strong that there is no reasonable probability that the verdict might have been different, errors, if any were committed, could not deny the defendant fundamental fairness.  See, e.g., United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994) ("To the extent any of the incidents constituted error, we believe that in light of the strong evidence of guilt, the errors were harmless and did not deprive

17

Copple of a fundamentally fair trial.").

For the same reasons that the court finds Petitioner failed to carry his burden to prove prejudice under Strickland, the court finds that Petitioner failed to prove that his trial was fundamentally unfair, or, in other words, that "there [was] a reasonable probability that the verdict might have been different had the trial been properly conducted[,]" Foy v. Donnelly, 959 F.2d at 1317, i.e., had the jury not viewed the portion of the notes objected to by the Petitioner.  Hence, this issue does not merit the grant of relief.[7]

### D.  Certificate of Appealability

A certificate of appealability (COA) should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).  There is a difficulty with applying this provision when the District Court decides the case on procedural grounds and/or only decides the merits in the alternative to its procedurally based disposition. See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000).  In Slack v. McDaniel, the Supreme Court held that "when

---

[7]  Given the clarity of the fact that Petitioner procedurally defaulted his coerced confession claim, the court will not address that issue on the merits, other than to note that the trial court at the suppression hearing found that the Commonwealth met their burden of proof by the preponderance of the evidence to show that "there were no constitutional infirmities" in Petitioner's confession.  SCR, Suppression Hearing Transcript at p. 87; id. at 88 ("I think the better weight of the evidence shows that it [i.e., the confession] was freely given").

the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 478.  Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Id. at 484-85.  The test is conjunctive and both prongs must be met.  See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the petition for procedurally defaulting his claims was correct.  Likewise, the court also concludes that jurists of reason would not find it debatable whether Petitioner failed to establish his claims merited relief.  Accordingly, a certificate of appealability should be denied.

**CONCLUSION**

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections

shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

/s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: November 6, 2006

cc:  The Honorable Arthur J. Schwab
     United States District Judge

     Joseph Morton
     DY-8801
     S.C.I. at Rockview
     Box A
     Bellefonte, PA 16823

     Ronald M. Wabby, Jr.
     Office of the District Attorney
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219

# Exhibit A

Joe · Morton w/m/36

Knew Tony since High
School - knew victim to
See Tony went to High School
with her brother Mike
who worked in Josephs
Pizza shop on Bggs - Day
of murder he & Tony
hanging out - talked @ going
some pussy - Go up to
Park & Rape someone had
a Halchen (marijuana pack)
no personal in mind to Park
to be her - Tony asked her
saw her - Tony & smoke a
if she wanted to Amy she
said yeah - walked (3) in
woods Tony punched her throat (2)
once grabbed her throat to sexual
couldn't she fell to ground

(2)
Tony also used her belt
around her neck - Tony took
off the victims clothes &
tampen. Tony pulled down sex with
his pants. He was standing
victim looking to see it
there looking was coming. Tony
anyone was coming. Tony
done. He pulled his penis
through zipper. He got on
top & faced to house sex
with victim penis going soft
had been holed while awake
Tony. While on top of her close
saw her face & Cuming out of
bleed on face & Cuming too large
mouth. His penis too small
for her vagina too touched
Tried a couple of her-covered
up - Tony dragged her house to
up - went to Tony's house to
get knife to make sure shes
Dead - Got knife & ran by his

Tony stabbed her in face
neck with knife - Had
out covered her that
Good - He stabbed her in
the same place as Tony
Tony stabbed @ 3-4 - Joe
stabbed 1-2 times- victim
could have been dead from Stabs
knife about 8" long Total
Steak type- Tony cut a bully
He felt a little further- He
Did not get inside penis too
limp & I find couple Times (no)
afterward they split up &
He went home- He stayed
shot time together- Had picked
up a girl left- Had picked
wasn't rape she wanted it- had
Tony Bass car Hitch hiking on
Brownsville Rd put on cloth cost
Cb

X Joseph B Morton
Joseph B Morton